[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff seeks to recover for personal injuries allegedly sustained in a fall on the premises of the defendant in Branford on January 26, 1998.
The plaintiff alleges that he sustained an injury to his left ankle when he came in contact with a "skid" which had been permitted to remain projecting into an aisle between displays of merchandise. This object had no merchandise on it and was 4 to 6 inches high, according to the plaintiff's evidence.
The defendant denies it permitted such a condition to exist and alleges contributory negligence on the part of the plaintiff. It also asserts that the plaintiff presented no evidence to show that a defect existed and that, if it did, the defendant had notice of the same.
 DISCUSSION I
The plaintiff offered no evidence that the alleged defective condition existed long enough for the defendant to have actual or constructive notice of it.
Consequently, the defendant moved for a judgment of dismissal after the plaintiff rested.
Though the court reserved decision, upon review it would appear that the element of notice is a requirement for this case and that the defendant must prevail on this issue.
The plaintiff cites Tuite v. Stop Shop Co.,45 Conn. App. 305 (1997) to refute the defendant's claim that notice is vital. That was a case where the defective condition was of the defendant's own making.
Taking the plaintiff's version of events at face value, the CT Page 9227 item described as a "skid" was "sticking out." There was no evidence offered as to how this "skid" came to be in that position.
 II
Even without the notice problem, the plaintiff's evidence is deficient in several other particulars. The plaintiff and his witness described the accident as occurring because this 4 to 6 inches high "skid" escaped his view and he struck it with the inside of his left ankle. A photo of the offending condition, taken by the plaintiff the day after the episode, shows neat stack bases piled with merchandise. On that photo, the plaintiff indicated where h struck the base (Exhibit 1). An examination of the photo reveals a wide aisle space with ample room for passing the loaded display. In fact, for the accident to have occurred as the plaintiff indicated, the plaintiff would have had to walk directly into the base as he moved toward the left of the display.
Of particular significance on the condition complained of is the testimony of an employee of the defendant, Christopher Graham. Though a plaintiff's witness described the accident as a wooden "skid" with strips of wood nailed across other wooden members, Mr. Graham testified that the base in question, and those in use in the store, were made of black plastic.
Mr. Graham also testified that the bases and display in the photo taken by the plaintiff were the same on the day of the photo as they had been for some time before because the particular items stacked on the base in question sold very poorly. This merchandise was stacked several feet high along the length of the display in the photo, Exhibit 1.
The testimony of Mr. Graham also reflects the steps taken to prevent the kind of accident the plaintiff alleges occurred and his role in insuring that the bases in question, under his supervision, were properly stocked or removed.
Thus, this defense testimony seriously weakens the plaintiff's version of stepping on or against an empty 4 to 6 inch high base which he could not see.
 III CT Page 9228
The defendant also interposed special defenses alleging contributory negligence. And, the plaintiff admitted that as he walked through the store carrying a 2 foot by 2 1/2 foot mirror in both hands, the mirror "slightly impaired his vision to the left" and he found if "difficult to see low." He also admitted the accident could have been avoided by his using a shopping cart. These, he said, were available outside the store.
It is difficult to assess liability against a defendant when a plaintiff is guilty of such negligence himself.
 IV
The defendant also presented testimony of a registered nurse who examined the plaintiff at the emergency room after the alleged accident.
In her report, she relates she was told the plaintiff tripped on a planter. He later told a doctor he banged his ankle on a ramp.
The emergency room report is at variance with the plaintiff's version of the symptoms he displayed when he arrived there.
Though not decisive in itself, this discrepancy lends further doubt as to the accuracy of the narration presented to the court.
 CONCLUSION
Based on the above, the court concludes that the plaintiff has not sustained his burden of proof and judgment may enter for the defendant.
Anthony V. DeMayo Judge Trial Referee